DURHAM CITY BOARD OF EDUCATION, PLAINTIFF v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, BLAND HORACE WALKER, AVA HINTON, INDIVIDUALLY, AND AVA HINTON, GUARDIAN AD LITEM FOR LAKISHA HINTON, DEFENDANTS

AVA HINTON, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR LAKISHA HINTON, PLAINTIFF v. BLAND HORACE WALKER, INDIVIDUALLY AND AS EMPLOYEE OF DURHAM CITY BOARD OF EDUCATION, AND THE DURHAM CITY BOARD OF EDUCATION, DEFENDANTS

No. 9114SC779

(Filed 2 March 1993)

1. Schools § 13 (NCI3d); Insurance § 896 (NCI4th) — student raped by coach — no duty of insurer to defend coach

In an action alleging assault and battery, negligence, intentional infliction of emotional distress, and violation of federal constitutional rights brought by the mother of a middle school girl against the middle school's boys' basketball coach based upon a sexual assault, defendant was not required to defend the coach under a policy of insurance issued to plaintiff school board by defendant, since the coach was not employed in an administrative position and was not acting within the scope of his duties as an employee of the school district when he allegedly raped the eighth grader.

Am Jur 2d, Municipal, County, School, and State Tort Liability § 534.

DURHAM CITY BD. OF EDUCATION v. NATIONAL UNION FIRE INS. CO.

[109 N.C. App. 152 (1993)]

2. **Schools § 4 (NCI3d); Insurance § 896 (NCI4th)— student raped by coach—duty of insurer to defend school board**

Defendant insurer had a duty under its errors and omissions policy to defend plaintiff school board in an action by a mother whose child was allegedly raped by a middle school coach where the mother alleged that the superintendent, assistant superintendent, principal, and supervising athletic coach failed to exercise due care for the health and safety of the child, negligently failed to reprimand or counsel the coach when they knew he was likely to engage in improper sexual conduct with a student under his supervision, failed to properly and timely investigate a sexual incident involving the coach and another thirteen-year-old student, failed to deal with the incident in a confidential and professional manner, and failed to establish proper policies and procedures in order to deal with incidents involving sexual contact between students and teachers, since the acts alleged against plaintiff were within the scope of the duties of the four employees; the policy by specific language covered the superintendent, assistant superintendent, and principal and covered the supervising coach as an employee acting within the scope of his duties; and the alleged acts fell into the definition of "wrongful acts" covered by the policy.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 627, 632.**

**Personal liability of public school executive or administrative officer in negligence action for personal injury or death of student. 35 ALR4th 272.**

3. **Insurance § 896 (NCI4th)— liability policy issued to school board—exclusionary language inapplicable—money damages suffered as result of negligent supervision—negligent supervision as wrongful act**

The exclusionary language of an errors and omissions policy provided by defendant to plaintiff school board did not apply to deny coverage to plaintiff since the allegations against plaintiff did not "involve a criminal act" or "arise out of" assault and battery or bodily injury; rather, the allegations against plaintiff's employees in the present case were for money damages suffered as a result of their negligent supervision

DURHAM CITY BD. OF EDUCATION v. NATIONAL UNION FIRE INS. CO.

[109 N.C. App. 152 (1993)]

of a coach who allegedly raped a student, a wrongful act which this errors and omissions policy was designed to cover.

**Am Jur 2d, Insurance § 708.**

**4. Schools § 11 (NCI3d)— liability insurance purchased—governmental immunity waived**

Plaintiff school board effectively waived its governmental immunity to claims for negligent supervision by purchasing liability insurance.

**Am Jur 2d, Municipal, County, School, and State Tort Liability § 60.**

**Liability or indemnity insurance carried by governmental unit as affecting immunity from tort liability. 68 ALR2d 1437.**

Appeal by defendant National Union Fire Insurance Company from order entered 3 April 1991 by Judge Henry W. Hight in Durham County Superior Court. Heard in the Court of Appeals 26 August 1992.

This is a declaratory action brought by the Durham Board of Education (the "Board") to determine whether an action brought by plaintiff Ava Hinton is covered under the Board's insurance policy (the "Policy") issued by National Union Fire Insurance Company ("National") and thus whether the Board has waived its sovereign immunity in the action. The action brought by Hinton alleges assault and battery, negligence, intentional infliction of emotional distress, and violation of federal constitutional rights against the Board and defendant Horace Bland Walker.

On 3 April 1991, the trial court entered a declaratory judgment and order finding the Policy does not provide coverage for the claims of assault and battery but does provide coverage for the claims of negligence, infliction of emotional distress, and violation of Hinton's civil rights. The trial court further held the Board waived sovereign immunity as to these three claims and National has a duty to defend Walker and the Board as to these three claims. From this judgment, National appeals. For the reasons stated below, we affirm in part and reverse in part the decision of the trial court.

**DURHAM CITY BD. OF EDUCATION v. NATIONAL UNION FIRE INS. CO.**

[109 N.C. App. 152 (1993)]

*Spears, Barnes, Baker, Wainio, Brown & Whaley, by Alexander H. Barnes, for plaintiff-appellee Durham City Board of Education.*

*Glenn, Mills & Fisher, P.A., by Stewart W. Fisher, for defendant-appellee Ava Hinton.*

*R. David Wicker, Jr. for defendant-appellee Bland Horace Walker.*

*Patton, Boggs & Blow, by C. Allen Foster and Eric C. Rowe, for defendant-appellant National Union Fire Insurance Company.*

ORR, Judge.

This action arises out of the alleged rape of plaintiff Lakisha Hinton by defendant Walker who was an employee of Shephard Middle School ("Shephard") at the time of the alleged rape. Plaintiff Ava Hinton filed an action individually and as guardian ad litem against Walker and the Board seeking compensatory and punitive damages and alleging assault and battery, negligence, intentional infliction of emotional distress, and violation of federal constitutional rights. The Board filed an answer asserting the defense of governmental immunity.

Hinton alleges Walker raped Lakisha and the Board failed to take appropriate action to prevent this rape. Hinton also alleges certain actions of the Board after the rape caused Lakisha further harm. At the time of the alleged rape, Lakisha was an eighth grade student at Shephard, and Walker was the Shephard's boys basketball coach. Hinton argues the Policy covers her claim so that National has a duty to defend both Walker and the Board and that the Board effectively waived its sovereign immunity.

On 15 December 1989, plaintiff filed a summary judgment motion on the defense of sovereign immunity raised by the Board. On 2 February 1990, Judge Anthony M. Brannon ordered that a decision on the issues of insurance coverage and sovereign immunity be continued until National was joined in the action or companion action.

On 12 April 1990, the Board filed this action seeking a declaration as to whether the Policy provides coverage as to any of plaintiff's claims. Hinton and Walker were joined as co-defendants. On 16 May 1990, National filed an answer denying coverage exists.

DURHAM CITY BD. OF EDUCATION v. NATIONAL UNION FIRE INS. CO.

[109 N.C. App. 152 (1993)]

Hinton filed an answer and cross-claim against National seeking a declaration that the Policy provides coverage to Walker. On 3 April 1991, the trial court entered a declaratory judgment and order finding the Policy does not provide coverage for claims of assault and battery but does provide coverage for negligence, infliction of emotional distress, and violation of Hinton's civil rights. The trial court further held the Board waived sovereign immunity as to these three claims and National has a duty to defend Walker and the Board as to these three claims. For the reasons stated below, we affirm in part and reverse in part the decision of the trial court.

[1] Hinton contends, and the trial court ruled, that National has a duty to defend Walker under the Policy. We disagree.

"An insurer's duty to defend suits against its insured is determined by the language in the insurance contract . . . ." *Brown v. Lumbermens Mutual Casualty Co.*, 326 N.C. 387, 392, 390 S.E.2d 150, 153 (1990) (citations omitted). The terms of an insurance policy govern the scope of its coverage, and "the intention of the parties controls any interpretation or construction of the contract . . . ." *Fidelity Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986). The court must use the definitions given in the policy to determine the meaning of words contained in the policy. *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). "In the absence of such definition[s], nontechnical words are to be given a meaning consistent with the sense in which they are used in ordinary speech. . . ." *Id.*

Any ambiguity in an insurance contract must be resolved in favor of the insured. *Maddox v. Colonial Life and Accident Ins. Co.*, 303 N.C. 648, 650, 280 S.E.2d 907, 908 (1981). In addition, in North Carolina, "[e]xclusions from and exceptions to undertakings by the company are not favored, and are to be strictly construed to provide the coverage which would otherwise be afforded by the policy." *Id.*

When considering whether terms in an insurance policy create the duty to defend, the court may compare the pleadings to the terms of the policy. "When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*,

DURHAM CITY BD. OF EDUCATION v. NATIONAL UNION FIRE INS. CO.

[109 N.C. App. 152 (1993)]

315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986). After analyzing the terms of the policy, "the pleadings are read side-by-side with the policy to determine whether the events as alleged are covered or excluded." *Id.* at 693, 340 S.E.2d at 378. "[T]he insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular policy." *Id.* at 691, 340 S.E.2d at 377.

In the case *sub judice*, the Policy provides that National will "[d]efend any action or suit brought against the Insured alleging a Wrongful Act. . . ." The Policy defines a "Wrongful Act" as "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement or omission committed solely in the performance of duties for the School District. . . ." Under the Policy, "[i]nsured shall . . . mean any employee of the School District who holds a position of Superintendent or Assistant Superintendent, . . . Principal . . ., or any equivalent administrative position." Additionally, an endorsement in the Policy amends this definition of insured to include "any employee of the School District while acting within the scope of his or her duties as such."

To come under the coverage of the Policy, Walker must fall under the definition of "insured." Because he was not employed in an administrative position, the only definition for "insured" he could fall under in the Policy is the definition found in the endorsement. In order to come under the language in the endorsement, the acts alleged against Walker must have allegedly occurred while Walker was acting within the scope of his duties as an employee of the School District.

In the pleadings, Hinton alleges that Lakisha called the school and asked for a ride from the female athletic coach. Instead, Walker picked Lakisha up from her house and took her to his house where he engaged in sexual intercourse with her against her will. Although Hinton couches her claims in terms of negligence, intentional infliction of emotional distress, and violation of federal constitutional rights, the claims are still based solely on the alleged sexual assault of Lakisha by Walker.

As our Supreme Court held in *Medlin v. Bass*, 327 N.C. 587, 398 S.E.2d 460 (1990), a sexual assault by a school board employee upon a student is beyond the course of the employee's employment. Based on the holding in *Medlin*, the allegations against Walker would fall outside of the scope of his employment and outside

DURHAM CITY BD. OF EDUCATION v. NATIONAL UNION FIRE INS. CO.

[109 N.C. App. 152 (1993)]

of the Policy coverage. Therefore, based on *Medlin*, National does not have a duty to defend Walker, and the trial court erred in so holding.

**[2]** Next, Hinton contends, and the trial court ruled, that the Policy covers the Board and creates a duty in National to defend the Board against Hinton's allegations. We agree. In order for National to have a duty to defend the Board, the Board must come under the definition of "insured" in the Policy, and the allegations against the Board must come under the definition of "Wrongful Act[s]."

In the pleadings, Hinton alleges the Superintendent of the Board, Dr. Cleveland Hammonds ("Hammonds"), the Assistant Superintendent of the Board, Mr. Lynn Smith ("Smith"), the Principal of Shephard, Mr. John Hunter ("Hunter"), and a supervising athletic coach at Shephard, Willie Bradshaw ("Bradshaw"), failed to exercise due care for the health and safety of Lakisha, negligently failed to reprimand or counsel Walker when they knew Walker was likely to engage in improper sexual conduct with a student under his supervision, failed to properly and timely investigate a sexual incident involving Walker and another thirteen-year-old student, failed to comply with the standard of conduct which a parent could reasonably expect from each of their respective positions within the school, failed to deal with the incident with Lakisha and Walker in a confidential and professional manner, and failed to establish proper policies and procedures in order to deal with incidents involving sexual contact between students and teachers. In addition, Hinton alleges Hammonds negligently hired Walker when he knew of Walker's propensity toward engaging in sexually provocative behavior with students.

As the Superintendent, the Assistant Superintendent, the Principal of Shephard, and a supervising athletic coach of Shephard, the duties of these four employees would include taking precautions to prevent sexually provocative behavior between a teacher and a student, investigating an alleged sexual incident between a teacher and a student, supervising an athletic coach, and exercising professionalism and confidentiality in the investigation of a sexual incident involving a teacher and a student. The acts alleged against the Board, are, therefore, within the scope of the duties of Hammonds, Smith, Hunter, and Bradshaw.

DURHAM CITY BD. OF EDUCATION v. NATIONAL UNION FIRE INS. CO.

[109 N.C. App. 152 (1993)]

By its specific language, the Policy covers Hammonds, Smith, and Hunter as "insured" because they are the "Superintendent," the "Assistant Superintendent," and the "Principal" of Shephard. The Policy also covers Bradshaw as an "insured" by the language of the endorsement as any employee acting within the scope of his duties. Additionally, these alleged acts fall into the definition of "Wrongful Act[s]" as "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement or omission committed solely in the performance of duties for the School District. . . ." We hold, therefore, that the Policy covers the Board for these alleged acts and that National has a duty to defend the Board.

National further contends the Policy does not cover the Board based on *Medlin, supra.* We disagree.

National argues that the holding in *Medlin* applies to the issue of National's duty to defend the Board; the *Medlin* Court, however, did not address this issue. In *Medlin*, the principal of a school in Franklin County sexually assaulted a student at the school where he was employed. The mother of the student asserted claims against the Franklin County Board of Education ("FCB") and its officials for negligent employment of the principal and negligent investigation of the facts relevant to the incident. The trial court granted FCB and the officials their motion for summary judgment to dismiss the claims against them. The plaintiff appealed.

The issues on appeal in *Medlin* were whether the trial court erred in granting summary judgment for the claims of negligent employment and whether the principal's alleged sexual assault on the student occurred in the scope of his employment to create liability for FCB based on a *respondeat superior* theory. Our Supreme Court held summary judgment was proper in that insufficient evidence was presented to show a genuine issue of material fact to prove negligent employment and that FCB was not liable on a *respondeat superior* theory for the principal's alleged sexual act. *Medlin*, 327 N.C. at 592, 594, 398 S.E.2d at 463-64.

In the present case, we are not deciding whether sufficient evidence exists to establish the allegations against the employees of the Board but instead whether these allegations fall under the language of the Policy as wrongful acts committed in the course of their employment. The *Medlin* Court did not address whether negligent employment and failure to investigate alleged sexual in-

DURHAM CITY BD. OF EDUCATION v. NATIONAL UNION FIRE INS. CO.

[109 N.C. App. 152 (1993)]

cidents at the school fall within the scope of a school official's employment; *Medlin,* therefore, does not control.

**[3]** Next, National contends the exclusionary language of the Policy applies to deny coverage to the Board. The Policy specifically excludes from coverage "any claim involving allegations of . . . criminal acts . . .;" or "any claims arising out of . . . assault or battery;" or "any claim arising out of bodily injury. . . ." National argues that the allegations against the Board "involve" Walker's alleged rape of Lakisha, "arise out of" Walker's assault on Lakisha, and "arise out of" bodily injury to Lakisha. We disagree.

North Carolina courts disfavor exclusionary language in insurance policies and will construe such language strictly. *See Maddox,* 303 N.C. at 650, 280 S.E.2d at 908. Additionally, this Court has held that words in an insurance policy must be construed with reference to the purposes of the entire policy. *Blake v. St. Paul Fire and Marine Ins. Co.,* 38 N.C. App. 555, 557, 248 S.E.2d 388, 390 (1978). Applying these rules, the exclusionary language of the Policy does not work to exclude coverage for the Board.

Because the Policy does not define "involving," we must apply the ordinary meaning of this word. The American Heritage Dictionary defines "involve" as "[t]o have as a necessary feature. . . ." Applying this definition with a strict construction of the exclusionary language and in light of the purposes behind the Policy, the allegations against the Board do not involve a criminal act. The allegations against the employees of the Board are made up of supervisory acts. These employees had a duty to the students of Shephard to supervise the teachers, employ competent teachers, and to conduct themselves in a professional manner as to matters concerning the school. This duty arises out of their employment as the Superintendent, the Assistant Superintendent, the Principal, and the supervising athletic director. The allegations do not include the alleged criminal act of Walker as a "necessary feature." Additionally, the Policy is an errors and omissions policy designed to insure the Board against wrongful acts of Board employees performed in the scope of their employment. These alleged wrongful acts would fall into the category of the type of acts the Policy is designed to cover. Thus the language excluding acts "involving criminal acts" does not exclude the allegations against the employees of the Board.

DURHAM CITY BD. OF EDUCATION v. NATIONAL UNION FIRE INS. CO.

[109 N.C. App. 152 (1993)]

National also argues the language excluding acts "arising out of" assault and battery or bodily injury prevents coverage for the acts of the employees of the Board. We disagree. Because the Policy does not define "arising out of" we again must apply the ordinary definition of this phrase. National argues that the Court should define this phrase broadly as we did in *Fidelity & Casualty Co. of N.Y. v. North Carolina Farm Bureau Mutual Ins. Co.,* 16 N.C. App. 194, 192 S.E.2d 113, *cert. denied,* 282 N.C. 425, 192 S.E.2d 840 (1972).

*Fidelity* is distinguishable, however, from the present case. "In *Fidelity & Casualty v. Farm Bureau,* we were interpreting an automobile liability policy in light of the established purpose of our mandatory financial responsibility laws to provide broad protection for the public. . . ." *Mastrom, Inc. v. Continental Casualty Co.,* 78 N.C. App. 483, 486, 337 S.E.2d 162, 164 (1985). We were not interpreting an exclusionary clause as we are in the present case.

The clause at issue in *Fidelity* provided, "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or destruction of property caused by accident *arising out of the ownership, maintenance or use* of the automobile." *Fidelity,* 16 N.C. App. at 195-96, 192 S.E.2d at 116. The issue there was whether the act of loading a tank truck came under this language in the policy. We stated, "Generally, an omnibus clause should be construed liberally in favor of the insured and in accordance with the policy of the clause to protect the public." *Id.* at 197, 192 S.E.2d at 117 (citation omitted). Based on this rule, we interpreted the words " 'arising out of' " as "broad, general, and comprehensive terms effecting broad coverage" such that the act of loading the tank truck arose out of the ownership, maintenance or use of the truck. *Id.* at 198, 192 S.E.2d at 118. We interpreted the language "arising out of" broadly in light of the policy of liberal construction of omnibus clauses to provide coverage under the policy.

The case before us does not involve an omnibus clause; instead it involves an exclusionary clause. The policy reasons for interpreting "arising out of" broadly are, therefore, not present. We thus will not apply a broad definition for "arising out of," as we did in *Fidelity,* but we will instead interpret the language strictly, following our decision in *Herndon v. Barrett,* 101 N.C. App. 636, 400 S.E.2d 767 (1991).

DURHAM CITY BD. OF EDUCATION v. NATIONAL UNION FIRE INS. CO.

[109 N.C. App. 152 (1993)]

*Herndon* involved an errors and omissions insurance policy with an exclusionary clause similar to the one presently before us. The clause in *Herndon* excluded coverage for "any claim related to injury arising from 'bodily injury', . . '. [or] 'assault or battery,'. . . ." *Id.* at 641-42, 400 S.E.2d at 770. National Union had issued this policy to the City of Kings Mountain to cover wrongful acts of law enforcement employees and the City of Kings Mountain. The issue before us was whether the allegations against the City arose out of either bodily injury or an assault and battery.

In *Herndon*, plaintiff Herndon was injured at work in the Magistrate's Office during a fight between two Kings Mountain police officers. Herndon alleged that the City of Kings Mountain and the three supervising officers were negligent in failing to supervise the officers. The defendant argued that the exclusions barred coverage for the City of Kings Mountain because the allegations arose out of the assault and battery committed by the two officers and the bodily injury to Herndon. We held:

> With respect to the City of Kings Mountain, its negligence, if any, was insured under Coverage B of the policy. The exclusions applicable would apply to claims for "bodily injury" or injury arising from ". . . assault or battery, . . . ." Plaintiff's cause of action against the City of Kings Mountain is also based on negligent supervision. Contrary to defendants' argument, plaintiff's claim does not arise from assault or battery. With respect to the "bodily injury" exclusion, plaintiff's claim is for money damages suffered as a result of defendant City's negligent supervision of the two officers.

*Id.* at 642, 400 S.E.2d at 771.

Based on our holding in *Herndon*, Hinton's allegations in the present case neither "arise out of" an assault or battery nor "arise out of" bodily injury. As in *Herndon*, the allegations against the Board employees in the present case are for money damages suffered as a result of their negligent supervision. The exclusionary language does not, therefore, deny coverage to the Board.

[4] Finally, we must address the issue of governmental immunity. The Board is a governmental agency which is entitled to governmental immunity. As National concedes, however, the Board is authorized to waive its governmental immunity pursuant to N.C.

Gen. Stat. § 115C-42 by purchasing liability insurance. N.C. Gen. Stat. § 115C-42 states:

> Any local board of education, by securing liability insurance as hereinafter provided, is hereby authorized and empowered to waive its governmental immunity from liability for damage by reason of death or injury to person or property caused by the negligence or tort of any agent or employee of such board of education when acting within the scope of his authority or within the course of his employment. Such immunity shall be deemed to have been waived by the act of obtaining such insurance, but such immunity is waived only to the extent that said board of education is indemnified by insurance for such negligence or tort.

Because the Policy purchased by the Board covers Hinton's allegations against the Board, the Board has effectively waived its governmental immunity.

Affirmed in part and reversed in part.

Judges WELLS and GREENE concur.